IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dwight Xavier Jones, ) | C/A No. 5:11-754-RBH-KDW |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Report and Recommendation |
| Melody James, Cayce Magistrate Court Judge; PSO ) | |
| Bradoc; Cayce Public Safety; Major Quig, Lexington ) | |
| County Detention Center; Captain O'Neil, Lexington ) | |
| County Detention Center; Patsy McDaniel, Lexington ) | |
| County Detention Center, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, an inmate with Trenton Correctional Institution, filed this 42 U.S.C. § 1983 action while he was a pre-trial detainee at the Lexington County Detention Center ("LCDC"). This matter is before the court on the Motion for Summary Judgment filed by Defendants Quig and O'Neill[1] (incorrectly identified as O'Neil) on November 16, 2011. ECF No. 87. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[2] on November 17, 2011, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 88. Plaintiff responded to Defendants Quig and O'Neill's Motion for Summary Judgment on December 12, 2011, making this motion ripe for consideration. ECF No. 94. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d)

---

[1] The court dismissed Defendants Melody James and Cayce Public Safety on October 18, 2011, ECF No. 69, and dismissed Defendant Bradoc on February 2, 2012. ECF No. 109.

[2] On November 17, 2011, United States Magistrate Judge Paige J. Gossett, entered "Roseboro order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

and (e), D.S.C.[3] Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

I. Background

Plaintiff filed his Complaint on March 29, 2011, alleging constitutional and other deprivations against Defendants, including denial of access to courts, denial of his right to counsel, and conditions of confinement. ECF No. 1. Specifically, Plaintiff contends that on or around November 17, 2010 and December 14, 2010, he mailed correspondence to the United States Supreme Court and he did not receive a response. ECF No. 1 at 3. Plaintiff then claims that he wrote his mother on January 18, 2011 and asked her to send the "enclosed letter to the U.S. Supreme Court." *Id.* Plaintiff states that he received a response from the United States Supreme Court who notified Plaintiff that his ninety-day deadline to file a petition for writ of certiorari had expired. *Id.*; ECF No. 16-1 at 1-3. Plaintiff argues that he "keeps up with [his] deadlines in the process of civil look how I followed 0:09-269-HMH-PJG. That was from the jail to the street back to jail. So how did I miss the most important process? They are tampering with my mail." ECF No. 1 at 8.

Plaintiff also alleges that he is representing himself in two civil actions and that his mother sent him legal mail that was returned to her on February 18, 2011 stamped "Return to Sender." *Id.* at 3. Plaintiff also avers that other mail he was supposed to receive somehow "disappeared off the earth." *Id.* Plaintiff alleges that he was not given access to a law library, which caused him to miss a deadline in one of his cases, thereby denying him his right to counsel under the Sixth Amendment. *Id.* Plaintiff further contends that he received a memorandum on August 1, 2010 stating that inmates can no longer receive "legal size from no other people but

---
[3] On January 2, 2012, the matter was reassigned from United States Magistrate Judge Paige J. Gossett, to the undersigned. ECF No. 99.

law firms." *Id.* Plaintiff contends that as a detainee he signed no waiver of his rights, and he is unable to represent himself "with no source." *Id.* Finally, Plaintiff complains that there is "mold on the walls in the corner, no fire sprinklers, and the showers clog up where you (sic) feet are in fungus contaminated water." *Id.* at 8.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments submitted, the undersigned recommends that Defendant Quig and O'Neill's Motion for Summary Judgment be granted.

III.    Analysis

Defendants Quig and O'Neill contend that they are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). ECF No. 87-1 at 20-21. Section 1997e(a) provides that

"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "'need not meet federal standards', nor must they be 'plain, speedy, and effective.'" *Porter, 534 U.S.* at 524 (quoting *Booth*, 532 U.S. at 739). Further, pretrial detainees, which Plaintiff was at all times relevant to these claims, are required to exhaust administrative remedies. *See* 42 U.S.C.A. 1997e(h) (defining "prisoner" for PLRA purposes as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."); *see also Rutland v. Dewitt*, C/A No. 8:09-13-SB, 2010 WL 288217, *5 & n.1 (D.S.C. Jan. 25, 2010) (applying PLRA to pretrial detainee).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

In support of their motion for summary judgment, Defendants Quig and O'Neill offer the affidavit of Kevin Jones who is the Jail Administrator for LCDC. ECF No. 87-3 at 1. Mr. Jones attests that the LCDC administrators "have established an inmate grievance procedure that allows inmates to file grievances related to the conditions of confinement." *Id*. at 5. The procedures provide that an inmate must file a grievance with their dorm officer and either the officer or the officer's supervisor will respond to the grievance. *Id.* at 6. If the inmate is not satisfied with the initial response, the inmate "must appeal the response up the chain of command, with final responses being issued by the Jail Administrator." *Id.* Mr. Jones attests that as Jail Administrator he reviewed his files and Plaintiff did not appeal any grievance to the Jail Administrator. *Id.* Therefore, Defendants contend that Plaintiff did not exhaust the administrative remedies available to him at LCDC. *Id.*

Plaintiff disputes his failure to exhaust his administrative remedies, arguing that he "ha[s] exhibits and a paper trail of dirt known and unknown." ECF No. 94 at 2. A review of the exhibits that the Plaintiff filed with the court shows that he filed grievances concerning his access to legal material and mail. ECF No. 16-1 at 6, 8. Plaintiff, however, did not appeal the

5

initial responses he received to these grievances as is required by the LCDC's grievance procedures. *Id.* Plaintiff is, therefore, not able to overcome the undisputed evidence that he failed to exhaust his administrative remedies on his claims. *See Pozo,* 286 F.3d at 1024 (holding that an inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983."); *see also Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir.1999) (finding that an inmate incarcerated in a state prison must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983). Accordingly, because Plaintiff failed to exhaust his available administrative remedies before filing this action, the undersigned recommends the court grant Defendants Quig and O'Neill's Motion for Summary Judgment.

IV. Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 87, be GRANTED, and that this case be dismissed against Defendants Quig and O'Neill.

IT IS SO RECOMMENDED.

July 16, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**